**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


KENNETH KOEPPLINGER, on behalf  )
of himself and others similarly  )
situated,  )
               Plaintiff,  )
  )
               v.  )            1:17cv995
  )
SETERUS, INC.,  )
  )
               Defendant.  )


**<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

      This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant Seterus, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint" (Docket Entry 18) (the "Dismissal Motion"). For the reasons that follow, the Court should deny the Dismissal Motion.

<u>**BACKGROUND**</u>

      This putative class action arises from a series of debt collection letters that Seterus, Inc. (the "Defendant") sent Kenneth Koepplinger (the "Plaintiff"). (<u>See, e.g.</u>, Docket Entry 16 (the "Amended Complaint"), ¶¶ 1-5.) According to the Amended Complaint:

      Defendant "is a servicer of mortgages for residential housing loans owned, backed, or controlled by Fannie Mae" (<u>id.</u>, ¶ 19), including the mortgage on Plaintiff's home (<u>see id.</u>, ¶ 25). Defendant obtained servicing rights to Plaintiff's mortgage "while

[it was] in a state of default," rendering Defendant "a 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)" of the Fair Debt Collection Practices Act (the "FDCPA"). (Id., ¶ 14.) In addition, Defendant "is a 'collection agency' as defined by the North Carolina Collection Agency Act ([the] 'NCCAA'), N.C.[ Gen. Stat.] § 58-70-15" (id., ¶ 15) or, alternatively, it "is a 'debt collector,' as defined by the North Carolina Debt Collection Act ([the] 'NCDCA'), N.C.[ Gen. Stat.] § 75-50" (id., ¶ 16).

Defendant "earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties." (Id., ¶ 20.) Defendant services "hundreds of thousands of loans throughout the United States" (id., ¶ 29), but "[b]ecause it does not originate" consumer mortgages, Defendant "only becomes involved with a customer if it acquires the servicing rights to a portfolio of loans from Fannie Mae or if Fannie Mae agrees to allow [Defendant] to purchase the servicing rights to a portfolio of loans from another servicer" (id., ¶ 32). Many of the loans contained in a particular loan portfolio "are delinquent when [Defendant] acquires the rights to the portfolio" (id., ¶ 33) and other loans become delinquent during Defendant's "servicing of the loans" (id., ¶ 34).

"Upon information and belief, when loans for North Carolina customers become more than 45 days delinquent, [Defendant] sends a

letter that it refers to as a 'NC Final Letter' to coerce and intimidate the borrower into paying the entire default amount of the loan." (Id., ¶ 35.) The NC Final Letter states, inter alia:

> "If full payment of the default amount is not received by us . . . on or before the Expiration Date, **we will accelerate** the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and owing."
>
> The NC Final Letter further states:
>
> ["]If you send only a partial payment, the loan still will be in default and we may keep the payment and **still will** accelerate the maturity date.["]

(Id., ¶ 38 (citations omitted) (emphasis and ellipsis in original).) As such, "[t]he NC Final Letters cause borrowers to believe that they will lose their homes if all arrearages to [Defendant] are not paid within the time period identified in the Letter." (Id., ¶ 45.)

In this regard,

> [t]he NC Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if "full payment of the default amount is not received . . . on or before the Expiration Date," when [Defendant's] actual policy, attested to by a [Federal] Rule [of Civil Procedure] 30(b)(6) Deponent, is to **never** accelerate a loan that is less than 45 days delinquent.

(Id., ¶ 40 (emphasis and ellipsis in original).) "The following is a relevant portion of" the deposition discussing this policy (id., ¶ 41):

Q. My understanding of your testimony just now is that if [Defendant] receives a payment in response to an NC Final, then the debt is no longer 45 days due and so that's sufficient to hold off the acceleration process?
A. That's correct.

Q. Okay. And is that -- is that [Defendant's] policy just with regard to North Carolina?
A. That's [Defendant's] policy for the loans where we are accepting payments and we're able to apply full contractual payment to the loan.

Q. Okay. So in response to a letter like Exhibit [Q], [Defendant's] policy, if they're accepting payments, is if they receive an amount equal to a normal monthly payment, they will not accelerate the debt?
A. As long as, right, it brings the loan less than 45 days due.

Q. Okay. Where does it say that in this letter that if you make one payment or enough such that one payment is recorded, we won't do this, or does it say that?
A. Well, the expiration date provides really the -- the timeline where the customer needs to make some sort of payment so that the 45 days are not past due.

Q. Not some sort of payment, $3,204.72, that's what it says, right?
A. Yes. And we're allowing the customer, we're also -- yes. We would like the $3,204.72. But our objective is not to foreclose on our customers. Our objective is to be able to take -- even if it's a partial payment, if where -- if they're in the bucket where a partial payment can be made, our objective is to collect that payment to help them stay in their house. Because them making payments, staying in their house helps us in our business as well. Foreclosing on them is really not, you know, helpful to us nor to them.

Q. Yeah.
A. And so therefore, this letter is sent out per the guidelines that are outlined and we allow the customer -- we allow the customer to make that partial payment. And then when a full -- if a partial payment does not equal the contractual payment, then your -- then this letter still -- still stands. But because a contractual payment

is able to be applied to the loan account, then we don't
have to continue with the -- this letter.

(Id. (emphasis omitted).)

Moreover, "[u]pon information and belief, [Defendant] will not
accelerate borrowers' loans and proceed to foreclosure even if the
borrower fails to make a payment equal to the default amount listed
in the NC Final Letter *and* fails to make any payments that come due
during the notice period." (Id., ¶ 42 (emphasis in original).)
"Put simply, [Defendant] does not accelerate loans in the manner
threatened by its NC Final Letter in the usual course of business."
(Id., ¶ 43.) "The NC Final Letters misrepresent the conditions
under which [Defendant] intends to accelerate loans and materially
deceive consumers into believing their loans *will* be accelerated if
they fail to fully cure their default prior to the Expiration
Date." (Id., ¶ 44 (emphasis in original).)

"The NC Final Letters misrepresent [Defendant's] intentions
and present consumers with a false ultimatum that they satisfy all
arrearages within the false deadline identified in the NC Final
Letter, or face acceleration and ultimately foreclosure." (Id.,
47.)[1] "The NC Final Letters are materially misleading in that they

_____

1 In this regard, the NC Final Letter specifies, inter alia,
"[a]cceleration of the sums secured by the mortgage also may result
in the sale of the premises. . . . If the default is not cured on
or before the Expiration Date, [Defendant] and the Loan Owner . . .
may proceed without further notice to commence foreclosure
proceedings." (Docket Entry 16-2 at 1 (all-cap font omitted).)
[Citations herein to Docket Entry pages utilize the CM/ECF footer's
pagination.]

threaten consumers with acceleration and foreclosure when [Defendant] has neither the present intent, nor the present ability, to undertake such actions." (Id., ¶ 48.) "The[se] empty threats of acceleration and foreclosure . . . are clearly designed to scare and intimidate individuals into paying delinquent amounts" (id., ¶ 49) and may "caus[e] individuals to send additional money to [Defendant] that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments" (id., ¶ 50). "The empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not" (id., ¶ 52) and "make it impossible for a consumer to make a rational decision in response to the NC Final Letter because it threatens immediate, irreversible consequences" (id., ¶ 51).

"Accordingly, the NC Final Letters threaten action not actually intended to be taken by [Defendant] in the ordinary course of business and constitute unfair threats, coercion, or attempts to coerce payments from consumers in violation of the FDCPA, NCDCA or NCCAA." (Id., ¶ 54.) "Each NC Final Letter constitutes a separate violation of the FDCPA, the NCCAA or the NCDCA in that, *inter alia*, the NC Final Letter threatens to take action not taken in the ordinary course of business nor intended to be taken in the particular instance." (Id., ¶ 58.) Put another way:

> Each NC Final Letter creates a false sense of urgency
> designed to unfairly coerce payments from consumers in

that the letters indicate an intent to accelerate indebtedness if the arrearages are not cured by the deadline set forth in the NC Final Letters; however, pursuant to Defendant's actual corporate policy discussed *supra*, [Defendant] does not actually intend to follow through with its false ultimatum so long as consumers *partially* satisfy their arrearage.

(Id., ¶ 59 (emphasis in original).)  "As a result of the forgoing, Plaintiff has experienced anxiety, stress, anger, frustration, and mental anguish."  (Id., ¶ 60.)

Plaintiff therefore pursues claims under the FDCPA (id., ¶¶ 92-112), NCCAA (id., ¶¶ 113-31), and North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA") (id., ¶¶ 158-66), or, alternatively, NCDCA (id., ¶¶ 132-57).  In response, "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [(the "Rules"), Defendant] moves this Court to dismiss all claims against it in Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted."  (Docket Entry 18 at 1.) Plaintiff has opposed Defendant's Dismissal Motion (see Docket Entry 21), and Defendant has replied (see Docket Entry 23).

### DISCUSSION

### I. Relevant Standards

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  <u>Republican Party of</u>

<u>N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992).[2]  Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." <u>Coleman v. Maryland Court of Appeals</u>, 626 F.3d 187, 189 (4th Cir. 2010), <u>aff'd sub nom.</u>, <u>Coleman v. Court of Appeals of Md.</u>, 566 U.S. 30 (2012).  The Court must also "draw all reasonable inferences in favor of the plaintiff." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, the complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct.  <u>Id.</u>  Nevertheless, the complaint need not contain detailed factual recitations, as long as it provides "the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  "At bottom, determining whether a complaint states . . . a plausible claim for relief . . .

---

2    Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion.  <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 514 (2002).

will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679).

Finally, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." <u>E.I. du Pont</u>, 637 F.3d at 448. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." <u>Philips v. Pitt Cty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the parties have not had an opportunity for reasonable discovery." <u>E.I. du Pont</u>, 637 F.3d at 448.

## II. FDCPA Claim

As its first cause of action, the Amended Complaint asserts a claim for "[v]iolations of the [FDCPA], 15 U.S.C. § 1692, *et seq.*" (Docket Entry 16 at 15), including specifically Section 1692e (<u>see</u> <u>id.</u>, ¶¶ 99-105).[3] "The FDCPA protects consumers from abusive

---

3 The Amended Complaint also asserts that the alleged conduct violates Section 1692f. (<u>See</u> <u>id.</u>, ¶¶ 106-11.) Because, however, the FDCPA claim survives Rule 12(b)(6) dismissal based on the alleged Section 1692e violations (as discussed below), the Court need not determine whether the alleged Section 1692f violations independently support the FDCPA claim. <u>See</u> <u>Abraham P. v. Los Angeles Unified Sch. Dist.</u>, No. CV 17-3105, 2017 WL 4839071, at *6

and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." <u>United States v. National Fin. Servs., Inc.</u>, 98 F.3d 131, 135 (4th Cir. 1996). To this end, "Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection," including:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * * * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

<u>Id.</u> (internal quotation marks omitted) (alteration in original).

"Whether a communication is false, misleading, or deceptive in violation of [Section] 1692e is determined from the vantage of the 'least sophisticated consumer.'" <u>Powell v. Palisades Acquisition XVI, LLC</u>, 782 F.3d 119, 126 (4th Cir. 2014) (some internal quotation marks omitted). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."

---

n.7 (C.D. Cal. Oct. 5, 2017) ("This [c]ourt's practice is to not dismiss parts of claims at the [Rule] 12(b)(6) stage because — unlike Rule 56, for example — [Rule] 12(b)(6) speaks of a motion to dis[mi]ss 'a claim,' not part of a claim. If the [asserted defense] does not get rid of the entire claim, then it cannot be dismissed.").

<u>National Fin.</u>, 98 F.3d at 136 (internal quotation marks omitted).[4]

In analyzing an alleged misstatement from this perspective, the Court "consider[s] how a naive consumer would interpret the statement." <u>Elyazidi v. SunTrust Bank</u>, 780 F.3d 227, 234 (4th Cir. 2015) (internal quotation marks omitted). To sustain a Section 1692e claim, a misstatement must qualify as "material," which means that it must either possess the potential to "frustrate [the least sophisticated] consumer's ability to intelligently choose his or her response," <u>Powell</u>, 782 F.3d at 126 (internal quotation marks omitted), or constitute the kind of misstatement that "would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt," <u>id.</u> at 127 (emphasis in original). Finally, "evidence of actual deception is unnecessary[;]" rather, "the test is the capacity of the statement to mislead." <u>National Fin.</u>, 98 F.3d at 139 (discussing Section 1692e(10) violation); <u>see also</u> <u>Neild v. Wolpoff & Abramson, L.L.P.</u>, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) (observing that "a plaintiff asserting a claim under [Section] 1692e need not prove actual reliance on a false representation").

Here, Defendant contends that the NC Final Letter does not violate Section 1692e because the "statement that [Defendant] would

_____

4 "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Id.</u>

accelerate Plaintiff's loan if payment was not made by the Expiration Date was not materially false or misleading." (Docket Entry 19 at 7.)[5]  In support of this contention, Defendant emphasizes that the Amended Complaint does not allege "that [Defendant] lacked authority to accelerate [Plaintiff's] loan under the terms of his loan documents, nor does [it] contend accelerating loans and initiating foreclosures are actions that [Defendant] does not perform in the regular course of business." (Id.)  Defendant further argues that the Amended Complaint

> allege[s], at most, a grace period that could prevent a customer from facing acceleration after making a payment in response to the [NC Final] Letter that, for whatever reason — interest accruing, additional monthly payments coming due, an assessment of fees or charges pursuant to the terms of the loan documents, a delay in the transmission of the payment — did not quite bring the loan current as of the date [Defendant] received the payment.

---

5  Plaintiff asserts that the NC Final Letter presents two interpretations, one of which requires payment of a specified default amount by the Expiration Date and the other of which requires payment of that amount plus the monthly payment that will become due prior to the Expiration Date. (See Docket Entry 16, ¶¶ 45, 46; Docket Entry 21 at 5-8.)  Defendant rejects this dual interpretation, maintaining that the NC Final Letter requires only payment of the specified default amount by the Expiration Date. (Docket Entry 23 at 3.)  For purposes of the Dismissal Motion, the Court need not determine whether the "least sophisticated consumer" could read the NC Final Letter to additionally demand payment of such consumer's regular monthly payment to bring the loan current by the Expiration Date, as both parties agree that the NC Final Letter at least demands full payment of the specified default amount (see, e.g., Docket Entry 21 at 9; Docket Entry 23 at 3) and, as discussed below, under such interpretation, Plaintiff's FDCPA claim survives Rule 12(b)(6) dismissal.

(Id. at 8.)[6]  These contentions lack merit.

To begin, the Amended Complaint does not rest upon allegations that Defendant (1) lacks authority to accelerate loans or (2) never accelerates loans and/or initiates foreclosures.  (See generally Docket Entry 16.)[7]  Instead, the Amended Complaint alleges that,

_____

6  In support of its Dismissal Motion, Defendant submitted mortgage loan documents that it asserts "the [Amended] Complaint relies on" (Docket Entry 19 at 3 n.2).  (See Docket Entries 19-1, 19-2.)  However, the Amended Complaint contains few details regarding the relevant loan and its supporting documentation (see Docket Entry 16), and Plaintiff's response to the Dismissal Motion does not address the submitted materials (see Docket Entry 21).  Accordingly, it remains questionable whether the Court could consider the submitted materials in resolving the Dismissal Motion. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (explaining that, at the Rule 12(b)(6) stage, court may consider only materials that are "integral to and explicitly relied on in the complaint"); see also Walker v. S.W.I.F.T. SCRL, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (explaining that the principle that the court may consider documents referred to in a complaint "does not apply to any and all documents that might be referenced in a complaint; rather, this principle requires more: it requires that the referenced document be central or integral to the claim in the sense that its very existence . . . gives rise to the legal rights asserted").  To the extent that the Court can consider the submitted loan documents, though, it bears noting that they do not permit Defendant to accelerate Plaintiff's loans for nonpayment of any charges coming due in the intervening period between sending an NC Final Letter and the relevant Expiration Date without providing a separate notice specifying such charges and a date — at least thirty days later — by which to pay such overdue amounts. (See Docket Entry 19-1, § 6(C); Docket Entry 19-2, § 22.)

7  Threatening to accelerate a loan without authority to do so would violate the FDCPA's prohibition on "threat[ening] to take any action that cannot legally be taken," 15 U.S.C. § 1692e(5). Possessing authority to take an action, though, does not shield one from liability for threatening to take such action if one does not actually intend to pursue such course of conduct under the circumstances presented.  See, e.g., Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006) ("conclud[ing] that it would be deceptive under the FDCPA for [the defendant] to assert that it

13

contrary to the NC Final Letter's statements (1) that Defendant will accelerate the loan (and may commence foreclosure proceedings without further notice (<u>see</u> Docket Entry 16-2 at 1)) if it does not receive "<u>full payment of the default amount</u> . . . on or before the Expiration Date" (Docket Entry 16, ¶ 38 (emphasis added)) and (2) that, "[i]f you send only a partial payment, . . . [Defendant] ***still will*** accelerate" the loan (<u>id.</u> (emphasis in original)), Defendant "***never*** accelerate[s] a loan so long as *any* payment sufficient to bring the loan less than 45 days delinquent is made prior to the [E]xpiration [D]ate" (<u>id.</u>, ¶ 2 (emphasis in original)).

In other words, the Amended Complaint alleges that the NC Final Letter falsely informs debtors that, on pain of acceleration and foreclosure, they must pay the entire specified default amount by the Expiration Date, when, in reality, to forestall acceleration and foreclosure under Defendant's corporate policy, they need only

---

*could* take an action that it had no intention of taking and has never or very rarely taken before" (emphasis in original)); <u>Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 25 (2d Cir. 1989) (finding violation of Sections 1692e(5) and 1692e(10) where the defendant's notice threatened legal action regarding alleged $135 debt, but, per its deposition testimony, the defendant "routinely would take no further action on debts under $150.00, other than to try to contact by phone" (internal quotation marks omitted)); <u>see also</u> <u>Brown</u>, 464 F.3d at 455 ("The FTC Commentary observes that a debt collector 'may state that a certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts,' but where the debt collector 'has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.'").

pay enough of the default amount (and/or of any other intervening charges) to bring their loans less than 45 days past due by the Expiration Date.    Accepting these allegations as true, they plausibly allege violation of Section 1692e.    See, e.g., Hall v. Nationstar Mortg., LLC, 255 F. Supp. 3d 625, 632 (E.D. Pa. 2015) (finding Section 1692e(5) violation where the defendants "assert[ed] the possibility of something [i.e., a Sheriff's Office sale within three month] that simply was not going to occur, even if it could technically occur," explaining that, due to Sheriff's Office practices, the assertion that "a Sheriff's sale could occur within three months . . . . would be untrue as a factual matter"); Morgan v. Credit Adjustment Bd., Inc., 999 F. Supp. 803, 808 (E.D. Va. 1998) (finding Section 1692e(10) violation where "the notice could easily be interpreted by the least sophisticated consumer as creating a false sense of urgency" (citing "*The FTC Official Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097–50110 (1988) (stating that '[i]t is a violation to send any communication that conveys to the consumer a false sense of urgency')" (alteration in original))); see also Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006) (concluding that "it would be deceptive under the FDCPA for [the defendant] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before" (emphasis in original)).

Moreover, Defendant's argument regarding its undisclosed grace period tacitly concedes matters that would permit a reasonable fact-finder to deem the NC Final Letter deceptive. Put simply, even under Defendant's theory, failure to render "full payment of the default amount . . . on or before the Expiration Date" (Docket Entry 16, ¶ 38 (emphasis added)) could constitute the "whatever reason" that a payment "did not quite bring the loan current as of the date [Defendant] received [it]" (Docket Entry 19 at 8). As a result, because (according to its Rule 30(b)(6) deposition) Defendant does not accelerate loans in such circumstances (see Docket Entry 16, ¶ 41), a reasonable fact-finder could conclude that the NC Final Letter contains misstatements that "would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt," Powell, 782 F.3d at 127 (emphasis in original). As such, accepting as true the allegations in the Amended Complaint, the NC Final Letter could qualify as "false, misleading, or deceptive in violation of [Section] 1692e," id. at 126 (internal quotation marks omitted).

As a final matter, relying on district court cases from outside this Circuit, Defendant contends that Section 1692e(5) represents a special provision in the FDCPA designed to prevent empty threats to "*file a lawsuit* if [a consumer] does not pay [a] debt." (Docket Entry 19 at 9 (emphasis in original).) Thus, Defendant maintains, "Plaintiff's attempt to create a class action

lawsuit for a standard [NC Final] Letter based upon a statute clearly designed to prevent 'empty threats of litigation' by those who cannot or do not routinely file lawsuits should be rejected." (Id.)  This contention likewise misses the mark.

Even accepting Defendant's view of Section 1692e(5), the NC Final Letter appears to fall within that statutory proscription, as the NC Final Letter threatens to "commence foreclosure proceedings" after accelerating the loan if Defendant does not receive "full payment of the default amount . . . on or before the Expiration Date" (Docket Entry 16-2 at 1 (all-cap font omitted)) even though Defendant allegedly will not actually accelerate and foreclose so long as the customer brings the loan within 45 days delinquent by said deadline (see Docket Entry 16, ¶¶ 2, 41).  Moreover, nothing in the text of Section 1692e(5) limits its reach to litigation threats.  See 15 U.S.C. § 1692e(5).  Finally, courts have endorsed application of Section 1692e(5) outside the context of "empty threats" to "file a lawsuit" (Docket Entry 19 at 9 (emphasis omitted)).  See, e.g., Gonzalez v. Law Office of Allen Robert King, 195 F. Supp. 3d 1118, 1129 (C.D. Cal. 2016) ("[The p]laintiff pleads sufficient facts regarding [the d]efendants' course of conduct that was not intended to be taken: [the d]efendants talked to [the p]laintiff regarding a possible dismissal, failed to send a stipulation as indicated, then served [the p]laintiff with default judgment, all of which appear to contradict [the

d]efendants' stated intention to dismiss the action."); Douyon v. N.Y. Med. Health Care, P.C., 894 F. Supp. 2d 245, 258-59 (E.D.N.Y. 2012) (denying summary judgment on Section 1692e(5) claim regarding threat to "'see about coming with the sheriff and have you arrested'" because a material factual dispute existed regarding whether the defendant possessed an "intention of carrying out his threats"), order amended on reconsideration, No. CV 10-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).

In sum, none of Defendant's arguments warrant dismissal of Plaintiff's FDCPA claim.

### III. NCCAA Claim and NCDCA Claim

As its next cause of action, the Amended Complaint alternatively asserts claims under the NCCAA (see Docket Entry 16, ¶¶ 113-31) and the NCDCA (see id., ¶¶ 132-57). (See also id. at 18 (identifying "Second Cause of Action" (all-cap, bold, and underlined font omitted)), 21 (identifying "Third Cause of Action (*in the alternative*)" (all-cap, bold, and underlined font omitted) (italicization in original)).) "[P]rohibit[ing] unfair, deceptive, or fraudulent practices in the collection of debts," DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003), the NCDCA applies to any "[d]ebt collector," defined as "any person engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of [the NCCAA]," N.C. Gen. Stat. § 75-50(3) (internal quotation marks omitted). In turn, the

NCCAA applies to any "[c]ollection agency," defined as "a person directly or indirectly engaged in soliciting, from more than one person[,] delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims," N.C. Gen. Stat. § 58-70-15(a) (internal quotation marks omitted).  For present purposes, the parties agree that "the respective provisions of the NCCAA and NCDCA that Plaintiff alleges [Defendant] violated are substantially the same" (Docket Entry 19 at 11).  (See also Docket Entry 21 at 19 ("The statutory provisions and remedies at issue in this case are essentially identical.").)

The NCCAA and NCDCA both prohibit attempting to collect a debt "by means of any unfair threat, coercion, or attempt to coerce," N.C. Gen. Stat. §§ 58-70-95, 75-51, including, inter alia, "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made," N.C. Gen. Stat. §§ 58-70-95(7), 75-51(7).  As to this prohibition, Defendant argues (in full):

> Moreover, Plaintiff has failed to state a claim under Section 85[sic]-70-95(7) or Section 75-51(7) by demonstrating that [Defendant] threatened to take any action that it does not take in the usual course of business.  As noted previously, Plaintiff has not alleged a lack of intent on the part of [Defendant] to accelerate the Loan (which [Defendant] does regularly), but only an asserted policy of providing a 45-day grace period for payments made following the Letter Date.  This policy does not make the notice of acceleration a "threat" of

> action [Defendant] did not intend to take.  In other
> words, to establish a violation of this subsection,
> Plaintiff must plausibly allege that accelerating loans
> or foreclosing on property are not actions [Defendant]
> takes in the usual course of business.  Plaintiff does
> not make this allegation and, indeed, his acknowledgement
> that [Defendant] is a servicer of mortgages for hundreds
> of thousands of loans renders any such allegation
> implausible.   [Docket Entry 16,]  ¶¶ 18-19, 29.
> Accordingly, the [NC Final] Letter cannot establish a
> violation of N.C. Gen. Stat. § 58-70-95(7) or N.C. Gen.
> Stat. § 75-51(7).

(Docket Entry 19 at 12-13.)

These arguments repackage Defendant's basic Section 1692e challenge, and fall short for the same reasons.[8]  As discussed above, the NC Final Letter threatens acceleration and foreclosure if a customer does not render "full payment" of a specified default amount by a specific date — and further warns that if a customer "send[s] only a partial payment . . . [Defendant] still will accelerate." (Docket Entry 16, ¶ 38 (emphasis omitted).)  However, Defendant allegedly follows a "policy" of not accelerating loans if, in response to an NC Final Letter, it receives a partial payment that renders the debt less than 45 days delinquent.  (Id., ¶ 40; see also id., ¶ 41.)   As such, the NC Final Letter "threaten[s] to take an[] action not in fact taken in the usual course of business," N.C. Gen. Stat. §§ 58-70-95(7), 75-51(7).

---

8    Given that North Carolina courts "have found cases construing the parallel federal statute [the FDCPA] to be particularly instructive, though not binding," in interpreting the NCDCA, Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000), this parallel outcome makes sense.

Under the circumstances, the Court should deny Defendant's request to dismiss Plaintiff's NCDCA[9] and (alternative) NCCAA claims.[10]

### IV. UDTPA Claim

Finally, Defendant seeks dismissal of Plaintiff's UDTPA claim. In support of this request, Defendant raises two arguments. First, Defendant maintains that "the NCDCA provides Plaintiff's exclusive remedy under Chapter 75" because his "allegations pertain only to debt collection." (Docket Entry 19 at 15.) Second, Defendant contends that "Plaintiff has failed to allege that [Defendant] engaged in any unfair or deceptive conduct." (Id.) Neither argument possesses merit.

---

[9] In a footnote to the final sentence in the NCCAA/NCDCA argument section of the Dismissal Motion's supporting memorandum, Defendant asserts that, "to state a claim under the NCDCA, a plaintiff must satisfy the generalized requirements of the []UDTPA," and that, "Plaintiff's NCDCA claim also fails because he has not alleged an unfair act or practice causing him injury, as discussed next in [the section challenging the UDTPA claim]." (Docket Entry 19 at 15 n.8.) As discussed in the next section, Plaintiff satisfies such requirements for a UDTPA claim and thus for an NCDCA claim.

[10] As with the alternative theories for Plaintiff's FDCPA claim, the Court need not resolve whether the NCCAA claim also could proceed on the ground that Defendant's conduct violated North Carolina General Statute Section 58-70-115 (prohibiting "unfair practices") (see Docket Entry 16, ¶¶ 125-30), or whether the NCDCA claim also could proceed on the ground that Defendant's conduct violated North Carolina General Statute Section 75-54 (prohibiting "fraudulent, deceptive or misleading representation[s]") and/or North Carolina General Statute Section 75-55 (prohibiting "unconscionable means") (see Docket Entry 16, ¶¶ 145-56). See Abraham P., 2017 WL 4839071, at *6 n.7.

The NCDCA provides that "[t]he specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by [North Carolina General Statute Section] 75-1.1 in the area of commerce regulated by this Article." N.C. Gen. Stat. § 75-56(a). However, the NCDCA does not "regulate[]" the debt collection actions of entities qualifying as collection agencies under the NCCAA. See N.C. Gen. Stat. § 75-50(3). The Amended Complaint alleges that Defendant "is a 'collection agency' as defined by the [NCCAA, N.C. Gen. Stat.] § 58-70-15. (Docket Entry 16, ¶ 15.) If so, the NCDCA would not apply to Defendant's conduct, see N.C. Gen. Stat. § 75-50(3), and thus would not "exclusively constitute the unfair or deceptive acts or practices proscribed by [North Carolina General Statute Section] 75-1.1," N.C. Gen. Stat. § 75-56(a). Under those circumstances, the NCDCA would not preclude a UDTPA claim. See DIRECTV, 294 F. Supp. 2d at 765-66 (denying motion to dismiss UDTPA claim where the NCDCA did not apply to alleged conduct). Accordingly, in light of the Amended Complaint's alternative NCCAA allegations, at this stage of the proceedings, the NCDCA does not necessitate dismissal of Plaintiff's UDTPA claim.

Next, as pertinent here, the UDTPA declares "unfair or deceptive acts or practices in or affecting commerce . . . unlawful." N.C. Gen. Stat. § 75-1.1(a).[11] Notably, Section

_____

11 "The determination of whether an act or practice is an unfair or deceptive practice that violates [Section] 75-1.1 is a

22

75-1.1 creates "two distinct grounds for relief and . . . [, although] an act or practice which is unfair may also be deceptive, or vice versa, it need not be so in order for there to be a violation." Rucker v. Huffman, 99 N.C. App. 137, 141, 392 S.E.2d 419, 421 (1990). Where a plaintiff premises a UDTPA claim on deceptive conduct, "[i]t must be shown that the plaintiff suffered actual injury as a proximate result of [the] defendant's deceptive statement or misrepresentation." Pearce v. American Def. Life Ins. Co., 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986) (observing that this requirement "is similar to the detrimental reliance requirement under a fraud claim"). "'Whether there be a causal relation between the violation of the statute and the injury complained of is an issue of fact for a jury . . . .'" Ellis v. Smith-Broadhurst, Inc., 48 N.C. App. 180, 184, 268 S.E.2d 271, 274 (1980) (ellipsis in original) (finding "a genuine issue of fact both as to the alleged misrepresentations and as to causal relationship between the alleged misrepresentations and plaintiff's [injury]").[12]

---

question of law for the court." Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); accord Forbes v. Par Ten Grp., Inc., 99 N.C. App. 587, 600, 394 S.E.2d 643, 650-51 (1990) ("Whether [the] defendants committed the alleged acts is a question of fact for the jury and, if so, whether the proven facts constitute an unfair or deceptive trade practice is a question of law for the court." (internal quotation marks omitted)).

    12 Defendant further maintains that "a plaintiff must allege 'some type of egregious or aggravating circumstances' to seek relief under the []UDTPA." (Docket Entry 19 at 16 (alteration

As discussed in the preceding section, the Amended Complaint alleges that the NC Final Letter states that recipients must pay the full amount of a specified debt by a certain date to avoid loan acceleration and foreclosure, when, in reality, a partial payment that brings the loan less than 45 days delinquent suffices to forestall acceleration and foreclosure. Because such conduct "has the capacity or tendency to deceive, it is deceptive for the purposes of the statute." Rucker, 99 N.C. App. at 142, 392 S.E.2d at 421-22.

Nevertheless, Defendant argues that the Amended Complaint fails to state a UDTPA claim because it does not establish injury from the asserted violation. More specifically, Defendant maintains that "Plaintiff has failed to articulate that [his] alleged injuries [of "anxiety, stress, anger, frustration, and mental anguish" (Docket Entry 16, ¶ 60; accord id., ¶ 164)] were

_____

omitted).) In so arguing, however, Defendant fails to establish that making intentionally false statements — particularly regarding the potential foreclosure of a home — does not qualify as an "egregious or aggravating circumstance[]" within the context of the UDTPA (see id. at 16-17). Compare Sara Lee Corp. v. Carter, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (1999) ("Because [the] defendant does not dispute the trial court's finding that his actions were fraudulent, [the] defendant's acts were conclusively 'unfair or deceptive.'"), with Dalton v. Camp, 353 N.C. 647, 658, 548 S.E.2d 704, 711-12 (2001) (finding "no evidence of attendant circumstances to indicate that [the defendant's] conduct was especially egregious or aggravating," where an employee negotiated a deal with a client and resigned after signing the deal, as "such business-related conduct, without more, is neither unlawful in itself . . . nor aggravating or egregious enough to overcome the longstanding presumption against unfair and deceptive practices claims as between employers and employees").

caused by [Defendant's] alleged []UDTPA violation . . . as opposed to Plaintiff's default itself or the resulting notice of his default that [Defendant] provided under the terms of his Note." (Docket Entry 19 at 17.) As a preliminary matter, Defendant points to no authority to support the proposition that Plaintiff needed to explicitly "articulate" such matters. (See id.) Moreover, the Amended Complaint asserts that "[t]he NC Final Letters cause borrowers to believe that they will lose their homes if all arrearages to [Defendant] are not paid within the time period identified in the Letter." (Docket Entry 16, ¶ 45.) It further asserts that Defendant's conduct, including "[t]he foregoing unfair or deceptive acts or practices," "directly" caused Plaintiff "anxiety, stress, anger, frustration, [and] mental anguish." (Id., ¶ 164; see also id., ¶ 60.) Accepted as true and drawing all reasonable inferences in Plaintiff's favor, those allegations suffice to forestall Rule 12(b)(6) dismissal. See Twombly, 550 U.S. at 555 (explaining that a complaint need not contain detailed factual recitations, as long as it provides "the defendant fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks and ellipsis omitted)).

In Defendant's view, however, it "is implausible" that Plaintiff's "alleged anxiety and stress was caused by the application of the ["45-day grace period"] policy and not by Plaintiff's undisputed default on his loan obligations." (Docket

Entry 19 at 17.)  As an initial matter, this argument misconstrues the relevant conduct — the issue remains Defendant's alleged false threat to accelerate and foreclose if Plaintiff failed to render "full payment" of a specified default amount rather than "application" of any purported "45-day grace period."  Further, the Court should not deem it implausible that the threat to accelerate and foreclose absent "full payment" of a specified amount in less than two months (see, e.g., Docket Entry 16-2 at 1), as well as the warning that even with a "partial payment . . . [Defendant] still will accelerate" the loan (id.), would cause a homeowner "anxiety, stress, anger, frustration, [and] mental anguish" (Docket Entry 16, ¶ 164).  See Giacomelli, 588 F.3d at 193 (explaining that determining plausibility "will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense'" (emphasis added)).

As a final matter, in its reply brief, Defendant introduces a new argument:

> Plaintiff's Opposition confirms that he is pursuing this claim under the "deceptive" prong of the NCUDTPA, rather than the "unfair" prong. . . .  However, for claims based on deceptive conduct, "recovery according to Chapter 75 is limited to those situations when a plaintiff can show [he or she] detrimentally relied upon a statement or misrepresentation and he or she suffered actual injury as a proximate result of [the] defendant's deceptive statement or misrepresentation."  Plaintiff has not alleged any detrimental reliance on [Defendant's] alleged deceptive act here.

(Docket Entry 23 at 9 (alteration and citation omitted) (quoting Forbes v. Par Ten Grp., Inc., 99 N.C. App. 587, 601 (1990)).)

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006); see also Hunt v. Nuth, 57 F.3d 1327, 1338 (4th Cir. 1995) (explaining that "courts generally will not address new arguments raised in a reply brief because it would be unfair to the [other party] and would risk an improvident or ill-advised opinion on the legal issues raised"); HSK v. Provident Life & Accident Ins. Co., 128 F. Supp. 3d 874, 884 (D. Md. 2015) ("To the extent [the plaintiff] suggests that [the defendant's] non-compliance with the settlement agreement is an independent basis for liability, that argument is procedurally improper. By waiting to raise it until his reply brief, [the plaintiff] deprived [the defendant] of an opportunity to respond, and deprived this court of the benefit of any such response."). Moreover, even if considered, that argument fails. The Amended Complaint alleges that the NC Final Letter "directly and proximately caused Plaintiff . . . anxiety, stress, anger, frustration, [and] mental anguish." (Docket Entry 16, ¶ 164.) Particularly when construed in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, that allegation implicitly reflects Plaintiff's

detrimental reliance on the NC Final Letter's allegedly deceptive representations.

Accordingly, at this stage of the proceedings, the Court should deny Defendant's request to dismiss Plaintiff's UDTPA claim.

## CONCLUSION

The Amended Complaint sufficiently alleges violations of the FDCPA, NCCAA, NCDCA, and UDTPA to survive Rule 12(b)(6) dismissal.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 18) be denied.

This 24th day of August, 2018.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
